UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER ESPINOZA and
HECTOR SANTANA,

                Petitioners,

v.

UNITED STATES OF AMERICA,

                Respondent.

_____/

Criminal Case Number 10-20635
Civil Case Number 16-12255/16-13848
Honorable David M. Lawson

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO VACATE SENTENCES

Petitioners Christopher Espinoza and Hector Santana were part of a Chicago-based drug trafficking organization that sold cocaine to distributors in Detroit.  They both worked for Manuel Antonio Soto.  When one of Soto's middlemen in Michigan did not pay for a cocaine shipment, Soto and his confederates cooked up a plan to collect the funds.  He sent a handful of individuals to Michigan, including Espinoza and Santana, either to find the money or kidnap the middleman and bring him back to Chicago.  The plan was to arrange for a supposed drug delivery, and when Soto's people showed up with the cocaine, they would pull their guns on the middleman and take either him or the money.  The plan took some twists and turns, but Espinoza, Santana, and others eventually were arrested and charged with kidnapping, drug, and firearm offenses.  Santana was convicted at a trial of conspiracy and distribution of cocaine, conspiracy to commit kidnapping and kidnapping, and two counts of brandishing firearms, one in connection with a drug trafficking crime and the other in connection with a crime of violence (kidnapping).  Espinoza was acquitted of the drug conspiracy charge but convicted on all the other counts.  They each received lengthy sentences, including a mandatory 25-year consecutive sentence on the second firearm offense.

Their convictions and sentences were affirmed on appeal. *United States v. Soto*, 794 F.3d 635 (6th Cir. 2015).

Espinoza and Santana each have filed motions to vacate their sentences under 28 U.S.C. § 2255. Both contend that they were denied the effective assistance of trial counsel for various reasons, and that their convictions for brandishing a firearm in furtherance of a crime of violence are invalid because kidnapping is not a valid predicate offense for that crime. Espinoza also says that he should be resentenced and given the benefit of the United States Sentencing Commission's guideline Amendment 794, which clarified the application of the section addressing an offense level adjustment for a minor participant. Supreme Court caselaw handed down after the petitioners' direct appeal requires that the crime-of-violence firearm sentences be vacated. The other arguments do not merit relief. The Court will grant the motions in part and deny them in part, vacate the convictions and sentences for brandishing a firearm in furtherance of a crime of violence, and schedule the case for resentencing.

I.

Espinoza, Santana, and two codefendants (Soto and Juan Ramon Respardo-Ramirez) were charged in a Fourth Superseding Indictment filed on April 2, 2013, with five counts: conspiracy to possess with intent to distribute and to distribute cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A)(ii)(II) (Count 1), conspiracy to kidnap in violation of 18 U.S.C. § 1201(a)(1)(C) (Count 5), kidnapping, aiding and abetting in violation of 18 U.S.C. § 1201 (Count 6), possession of a firearm in furtherance of and during and in relation to a drug trafficking crime in violation of (18 U.S.C. § 924(c)(1)(A)(ii)) (Count 7), and possession of a firearm in furtherance of and during and in relation to a crime of violence in violation of (18 U.S.C. § 924(c)(1)(C)(i)) (Count 8). The guns charged in counts 7 and 8 were a Llama Mini Max 45-caliber sub-compact

semi-automatic handgun, a Pietro Beretta Model 92 9mm caliber semi-automatic, and a Colt Model Cup National Match Model 45-caliber semi-automatic handgun with serial number NM50277.  In addition, Santana, Soto, and Espinoza were charged with possession with intent to distribute 500 grams or more of cocaine, aiding and abetting in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii)(II) (Count 2).  The indictment charged that the defendants were involved in a cocaine trafficking conspiracy between November 26, 2008, and January 23, 2012, and that in October 2009, the defendants conspired to kidnap Jose Ezequiel Enriquez-Enriquez for the purpose of collecting a drug debt.  The jury convicted the defendants of all charges with the following exceptions: defendant Espinoza was acquitted of Count 1 and defendant Respardo-Ramirez was acquitted of Count 5.

At trial, the government presented testimony from Erik Freeman, Vanissa Gudino, and Jose Bravo-Garcia, along with several law enforcement officers.

Vanissa Gudino testified that Jose Bravo-Garcia was her ex-boyfriend and that he was involved in dealing cocaine.  Through her relationship with Bravo-Garcia, she met Hector Santana, whom she called Bravo-Garcia's right-hand man.  According to Gudino, Santana picked up and delivered cocaine from Soto for Bravo-Garcia.  Jose Bravo-Garcia testified that Soto sold him kilograms of cocaine at a rate of approximately six to eight kilograms per week.  Respardo-Ramirez delivered the cocaine to Bravo-Garcia on Soto's behalf.  Bravo-Garcia sold cocaine to Freeman through Jose Enriquez-Enriquez.  Bravo-Garcia testified that Santana worked for him delivering cocaine, including a delivery of five kilograms of cocaine to Freeman in October 2009.  Bravo-Garcia testified that a plan to deliver ten kilograms of cocaine on behalf of Soto to Jose Enriquez-Enriquez and, in turn, to Freeman, went awry when a middleman took the drugs without paying for them.

In October 2009, Gudino and Bravo-Garcia made two trips to Detroit.  The first trip included Gudino, Bravo-Garcia, Santana, Espinoza, and Anthony Ramirez.  The purpose of the trip was to collect the money owed for the cocaine that Bravo-Garcia fronted or to kidnap the person who had stolen the money; Soto had been "hounding" Bravo-Garcia for the money or for the person who had received the drugs.  All the individuals involved were aware of the purpose of the trip and bought zip ties to restrain the victim.  The plan was for Bravo-Garcia to pretend to conduct a drug transaction with the victim, Jose Enriquez-Enriquez.

Santana and Espinoza confronted Enriquez-Enriquez with guns and forced him and another unidentified individual into a minivan.  They drove to Chicago, where Soto and Respardo-Ramirez joined them.  Soto was holding a gun; according to Bravo-Garcia, Respardo-Ramirez also was carrying a gun in the waistband of his pants.  After questioning the victims for approximately an hour, Soto left and Respardo-Ramirez remained to watch the victims.  At that point, Respardo-Ramirez was holding a gun and occasionally placing the gun on a table.

The next day, Gudino and Bravo-Garcia went on the second trip to Detroit.  The purpose of the trip was to rob Erik Freeman, an associate of Enriquez-Enriquez, to recover the money owed to Soto, who agreed to the plan.  On the trip were Gudino, Bravo-Garcia, Anthony Ramirez, Espinoza, Santana, and Enriquez-Enriquez.  They brought three kilograms of cocaine and three guns, two of which had been provided by Soto.  Bravo-Garcia testified that the guns were the same guns that had been used during the kidnapping the day before.  The unknown victim remained in Chicago with Respardo-Ramirez.  When the group met Freeman, they gave Freeman the cocaine to test one kilogram at a time.  Freeman entered a house to retrieve money to pay for the cocaine, and Bravo-Garcia, Espinoza, Ramirez, and Santana followed him in, carrying guns.  Bravo-Garcia, Espinoza, and Ramirez pointed guns at Freeman, and Freeman and Enriquez-Enriquez dropped to

the ground. Bravo-Garcia took the money out to the van, and returned to the house, where, he testified, Santana had tied Freeman to a pole in the basement. The men returned to the cars with money and the cocaine and drove away.

Both cars later were stopped by police. Bravo-Garcia called Soto to inform him that the police pulled over their vehicles, and he kept the phone connected during the stop so that Soto would believe him. After they were released by the police, Gudino and Bravo-Garcia returned to Chicago in a cab, and the unknown victim was no longer there.

Erik Freeman testified that he was involved in selling cocaine with Jose Enriquez-Enriquez and Francisco Enriquez-Enriquez. The Enriquez-Enriquez brothers sold Freeman cocaine that they obtained from suppliers in Chicago, including Santana and Bravo-Garcia. Freeman testified that in October 2009, Jose Enriquez-Enriquez called him and told him that he had cocaine to sell from his sources in Chicago. Freeman met with Enriquez-Enriquez, Santana, Bravo-Garcia, Espinoza, Bravo-Garcia's girlfriend, and a man with facial tattoos. They proceeded to a house on Washburn in two separate cars, and Enriquez-Enriquez, Santana, and Bravo-Garcia walked kilograms of cocaine into the residence one at a time. Freeman cooked some of the cocaine to ensure that it was pure. The group then moved to a house on Asbury Park to complete the transaction. Freeman entered the house carrying the money with the other men walking behind him. Bravo-Garcia, Espinoza, and the man with the facial tattoos pulled out guns and pointed them at Freeman. Freeman asked the men to take the money and leave. Bravo-Garcia told Freeman to go into the basement, where Freeman was duct-taped to a pole. Either Espinoza or the man with facial tattoos removed Freeman's wallet, keys, and phone from his pocket. Freeman freed himself about an hour later. The government introduced intercepted conversations between

Freeman and several of his associates relating to cocaine transactions, the robbery, and the kidnapping.

Jon Gerksy testified that on October 22, 2009, when he was employed as a City of Taylor police officer, he pulled over a car being driven by Jose Enriquez-Enriquez, whom he arrested for driving with a suspended license. Espinoza and Santana also were present in the car. The car was impounded, but no drugs or weapons were found. Brian Shock, a police officer with the City of Roseville, testified that on October 22, 2009, he pulled over a minivan being driven by Gudino. Bravo-Garcia and Ramirez also were present in the minivan. Upon searching the minivan, Shock discovered a secret compartment containing a large quantity of currency, cocaine, and a handgun. Shock testified that three handguns eventually were recovered from the minivan. Benjamin Swincicki, a special agent with the United States Drug Enforcement Administration, identified the three handguns recovered from the minivan as those charged in the indictment.

John Elstner, an officer with the Chicago Police Department, testified that he executed a search warrant at 4309 West 77th Place in Chicago, Illinois on January 27, 2010 and found Soto there. Elstner testified that the police recovered approximately $400,000 in U.S. currency, two assault rifles, and two handguns. The parties stipulated to the admission of evidence recovered from 5038 South Ridgeway, Chicago, Illinois and 5318 Mozart, Chicago, Illinois.

At the conclusion of the government's case, each of the defendants moved for a judgment of acquittal, which the Court denied. The motions were renewed after the verdicts were returned.

As noted, the jury convicted Santana of conspiracy to distribute cocaine (Count 1), cocaine distribution (Count 2), conspiracy to kidnap (Count 5), aiding and abetting kidnapping (Count 6), brandishing a firearm in furtherance of and during and in relation to a drug trafficking crime (Count

7), brandishing a firearm and in furtherance of and during or in relation to a crime of violence (Count 8). Espinoza was convicted of all but Count 1.

Espinoza was sentenced on Counts 2, 5, and 6 to concurrent 60-month prison terms; a seven-year (84 months) sentence for Count 7 to be served consecutively to the sentence on Counts 2, 5, and 6; and also a 25-year (300 months) sentence for Count 8 to be served consecutively to Count 7. The total, 444 months, is to be followed by a five-year term of supervised release.

Santana received a 120–month sentence for Counts 1, 2, 5, and 6 to be served concurrently; a seven-year (84 months) sentence for Count 7 to be served consecutively to Counts 1, 2, 5, and 6; and a 25-year (300 months) sentence for Count 8 to be served consecutively to Count 7. Five years of supervised release follows that 504-month prison sentence.

Both petitioners filed post-trial motions for judgment of acquittal. Espinoza argued that there was insufficient evidence for the jury to find that he specifically intended to deliver cocaine, he joined the conspiracy to kidnap, he participated in the kidnapping, and he possessed a firearm. Santana insisted the evidence was insufficient for the jury to find him guilty of conspiracy to kidnap, kidnapping, and brandishing a firearm in furtherance of a crime of violence, namely the kidnapping. The Court denied the motions on all grounds. *United States v. Santana*, 962 F. Supp. 2d 906, 912 (E.D. Mich. 2015).

On appeal, Espinoza repeated his insufficiency-of-evidence argument as to Counts 2 and 7, the cocaine delivery and related firearm charge. Santana argued that there was a fatal variance between Count 2 of the superseding indictment and the proofs, the Court should have severed the drug trafficking and kidnapping charges, and the imposition of a twenty-five year mandatory minimum for the second section 924(c) conviction violated the Sixth Amendment because a jury did not find that either section 924(c) offense was a "second or subsequent" offense. The court of

appeals rejected their arguments and affirmed the convictions and sentences. *Soto*, 794 F.3d at 665.

The petitioners then filed their motions to vacate the sentences under 28 U.S.C. § 2255, contending that they were denied the effective assistance of trial counsel in various ways. Espinoza supplemented his section 2255 motion, arguing that he was entitled to a sentence reduction based on Amendment 794 of the sentencing guidelines. Santana amended his motion to raise additional arguments challenging his section 924(c) conviction related to the kidnapping offense in light of recent Supreme Court and Sixth Circuit precedent.

## II.

A federal prisoner challenging his sentence under section 2255 must show that the sentence "was imposed in violation of the Constitution or laws of the United States," the sentencing court lacked jurisdiction, the sentence exceeds the maximum penalty allowed by law, or it "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)).

A claim that could have been raised on direct appeal generally is not reviewable in a section 2255 motion. *Bousley v. United States*, 523 U.S. 614, 621 (1998). However, a claim that "cannot otherwise be reviewed for the first time on a § 2255 motion can be reviewed as part of a successful claim that counsel provided ineffective assistance." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001). Claims of ineffective assistance of counsel properly are raised in a section

2255 motion.  *United States v. Graham*, 484 F.3d 413, 421-22 (6th Cir. 2007) (quoting *United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir. 1997)).

### A.  Firearms Convictions — Count 8

Both petitioners were charged in Count 8 of the superseding indictment with violating 18 U.S.C. § 924(c)(1)(A).  That statute punishes "any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm."  The statute defines "crime of violence" in two ways.  Under the "elements clause," a crime of violence is any crime that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. § 924(c)(3)(A).  The "residual clause" defines a crime of violence as any crime "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  18 U.S.C. § 924(c)(3)(B).

The term "violent felony" as used in several statutes to denominate certain sentencing-enhancing predicate offenses has been the subject of several appellate decisions that are critical of this definitional language.  *See generally Plagued By Vagueness: The Effect of* Johnson v. United States *and the Constitutionality of 18 U.S.C. § 924(c)(3)(B)*, 54 No. 4 Crim. Law Bulletin ART 3 (Summer 2018).  The Supreme Court declared one component defining the term — the so-called "residual clause" — void for vagueness in the context of predicate offenses used to enhance sentences under the Armed Career Criminal Act.  *See Johnson v. United States*, 576 U.S. ---, 135 S. Ct. 2551 (2015) (invalidating part of 28 U.S.C. § 922(e)(2)(B)(ii)).  The Court also invalidated part of the definition of "crime of violence" found in the criminal code, which lent that definition to the Immigration and Nationality Act.  *See Sessions v. Dimaya*, --- U.S. ---, 138 S. Ct. 1204 (2018) (finding 18 U.S.C. § 16(b) void for vagueness).  The identical offending language is found

in 18 U.S.C. § 924(c). The Supreme Court last term followed form and held that the residual clause, which defined an element of that crime, also was void for vagueness. *United States v. Davis*, --- U.S. ---, 139 S. Ct. 2319 (2019) (holding that 18 U.S.C. § 924(c)(3)(B) is unconstitutional).

In *Davis*, the Supreme Court scrutinized the language of section 924(c)(3)(B), applying the principles announced by it in *Johnson* and *Dimaya*. Based on those principles, the Supreme Court held that the identically worded penalty provision in section 924(c)(3)(B) also is unconstitutionally vague. *Id.* at 2336. Thus, deprived of any constitutionally sound footing under the now defunct residual clause, the petitioners' 924(c) convictions in Count 8 presently can stand only if the crime of kidnapping qualifies as a "crime of violence" under the elements clause in section 924(c)(3)(A).

Faced with the same argument in a case originating in the Eastern District of Tennessee, the government agreed that the crime of kidnapping does not so qualify. *Knight v. United States*, 936 F.3d 495, 497 (6th Cir. 2019) ("The government concedes that under *Davis* kidnapping in violation of 18 U.S.C. § 1201(a) is not a "crime of violence" and thus Knight's conviction under § 924(c) for using a firearm during and in relation to kidnapping must be vacated."); *see also United States v. Walker*, 934 F.3d 375, 378-79 (4th Cir. 2019). The government made the same concession in its supplemental response to Santana's section 2255 motion.

Because the charge of kidnapping under 18 U.S.C. § 1201(a) is no longer a qualifying predicate offense for firearms convictions charged under 18 U.S.C. § 924(c)(1)(A), Santana's and Espinoza's convictions of Count 8 and the accompanying 25-year consecutive sentences must be vacated.

The government also contends, though, that the Court should vacate the sentences on *both* the section 924(c) charge in Count 8 *and* the kidnapping sentence, "and decide to what extent to

*increase* [Santana's] kidnapping sentence to account for the vacated § 924(c) count." Sentencing judges have the discretion to "increase the sentence on a specific count where the original sentence was imposed as part of a package that included a mandatory consecutive sentence which was subsequently found to be invalid." *United States v. Bermudez*, 82 F.3d 548, 550 (2d Cir. 1996); *See also Pasquarille v. United States*, 130 F.3d 1220, 1222 (6th Cir. 1997) ("Every circuit that has considered this issue has held that the district court has the authority to resentence a defendant who has secured reversal of a § 924(c) conviction under § 2255."). Aside from conceding that the Court should vacate Santana's section 924(c) sentence, the government did not provide a reason why the Court should impose a harsher sentence for the kidnapping charge. But resentencing may be appropriate if new and relevant information is available. *See Pepper v. United States*, 562 U.S. 476, 490 (2011) (holding that on resentencing, "a district court may consider evidence of a defendant's rehabilitation since his prior sentencing and [] such evidence may, in appropriate cases, support a downward variance from the advisory Guidelines range"); *United States v. Flack*, 941 F.3d 238, 241 (6th Cir. 2019) (noting that "a district court resentences the defendant . . . when it revisits the § 3553(a) factors and determines anew what the sentence should be. A resentencing could thus result in the same sentence as the one the district court imposed initially" (citation omitted). The Court will vacate Espinoza's and Santana's convictions under Counts 8 and 6 and order resentencing on Count 6.

### B.  Ineffective Assistance of Counsel Claims

Both petitioners challenge their remaining convictions because, they say, they were denied their right to the effective assistance of counsel guaranteed by the Sixth Amendment.

To succeed on an ineffective assistance of counsel claim, the petitioner "must show both deficient performance and prejudice." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). An

attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). One way of establishing defective performance is to show that defense counsel missed a meritorious argument under the controlling law. However, the failure to file a meritless motion or raise a groundless objection does not constitute defective performance. *Jalowiec v. Bradshaw*, 657 F.3d 293, 321-22 (6th Cir. 2011) (stating that an "attorney is not required to raise a non-meritorious claim" (citing *Wilson v. Mitchell*, 498 F.3d 491, 514-15 (6th Cir. 2007))); *see also Knowles*, 556 U.S. at 123 (reiterating that the "[Supreme] Court has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success" to avoid a finding of deficient performance under *Strickland*).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

In a federal habeas proceeding, when the Court weighs a claim of ineffective assistance, "[a]n evidentiary hearing is required unless the record conclusively shows that the petitioner is entitled to no relief" on his claim. *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018) (quotations omitted). "Where there is a factual dispute, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims," but "[a] petitioner's mere assertion of his innocence, without more, does not entitle him to an evidentiary hearing." *Ibid.*

Where the record presents "considerable doubt" about the interactions of a petitioner and his attorney, the Court should conduct an evidentiary hearing to bring clarity to the proceedings.

-12-

*See Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003).  However, where the existing record demonstrates that claims of ineffective assistance are unsupported, or that the petitioner has not met the *Strickland* standard, no hearing is required.  *Goward v. United States*, 569 F. App'x 408, 412 (6th Cir. 2014).  A hearing in this case is not necessary to address the ineffective-assistance-of-counsel claims because the record amply demonstrates their lack of merit.

### 1. Espinoza's Arguments

Petitioner Espinoza contends that his trial attorney performed deficiently when he failed to (1) establish petitioner's minor role at trial; (2) obtain a statement from a key witness before the witness was deported; (3) file a motion for judgment of acquittal; (4) file a sentencing memorandum objecting to consecutive sentences on the two section 924(c) counts; and (5) move to sever the kidnapping offenses from the drug conspiracy offenses.

### a. Minor Role Argument

Espinoza insists that he played only a minor role in the kidnapping plot, and his lawyer did not emphasize that sufficiently.  He argues that the van he rode in had no guns in it and that he did not enter the house where Freeman was bound.  He contends that his acquittal of the drug conspiracy charge proves that he played a minor role.

The argument here, however, is made in the abstract; Espinoza does not tie it to anything specific that he says his lawyer did or did not do.  And these empty accusations about his attorney clash with the trial record.  The record reflects that Espinoza's lawyer vehemently argued that Espinoza was not even present at the crime, let alone played a minor role.  Counsel attempted to impeach an agent who surveilled the scene and demonstrate that she never saw Espinoza at the house where Soto's henchmen robbed Freeman.  Further, in Espinoza's post-trial motion, his

attorney argued that the jury's decision was based on inference, not evidence, and that if it were based on evidence, his client would be acquitted. No deficient performance is shown here.

Relating to his minor role, Espinoza also alleges that his attorney enticed him into a trial by promising a sentence of 22 years if he went to trial and 17 years if he pleaded guilty. The government did not respond to this accusation. Aside from a few lines in the petitioner's motion, nothing in the record makes any reference to these alleged statements. Espinoza did not raise this contention in his post-trial motion, at sentencing, or on direct appeal. There is insufficient evidence to justify vacating the petitioner's convictions on this ground.

### b.  Failure to obtain Key Witness Statement

Espinoza faults his attorney for failing to obtain a statement from Francisco Enriquez-Enriquez before he was deported. He says that the witness could have "exonerated" him. Espinoza contends that Francisco was one of the kidnapping victims and that he was driving the van that police stopped while Espinoza was riding as a passenger. When police stopped the van, Francisco did not mention anything to the police about being kidnapped. According to Espinoza, Francisco's failure to say anything demonstrated that he was not kidnapped, which therefore would have exculpated Espinoza. Espinoza reasons that failing to take Francisco's statement prejudiced him at trial.

This argument fails for two reasons. First, the record shows that it was not Francisco, but his brother, Jose Enriquez-Enriquez, who was driving the van that police pulled over. After being transported to Detroit following his arrest in Arizona for illegal reentry of an alien, Francisco became a co-defendant in this action and pleaded guilty to conspiracy to possess with intent to distribute cocaine. Francisco was not even in Detroit over the three days of the kidnapping incidents. Rather, it was Jose and his cousin Victor who were kidnapped and were the individuals

with knowledge about Espinoza's involvement in this action.  Thus, it appears that the petitioner confused Francisco for Jose as the "key witness" who could "exonerate" him.

Second, if the "key witness" is indeed Jose, then Espinoza's lawyer could not have interviewed him.  No one was able to contact Jose.  Jose was a fugitive throughout the proceedings and remains one to this day.  Even if the government located Jose, the Court noted that the traffic stop occurred after the Freeman robbery, not during the first return trip to Chicago immediately following the kidnapping.  "At that point the drug debt for which Jose Enriquez-Enriquez had been kidnapped had been vindicated by the robbery.  The fact that Enriquez-Enriquez was driving a car with Santana and Espinoza in it on October 22, 2009 therefore says nothing about whether Enriquez-Enriquez had been kidnapped the day before."  *United States v. Santana*, 962 F. Supp. 2d 906, 919 (E.D. Mich. 2013).  Thus, no prejudice resulted from counsel's failure to obtain a statement from the "key witness."

### c.  Failure to File Motion for Judgment of Acquittal

Espinoza says his trial attorney failed him by not moving for a judgment of acquittal on Count 8 and arguing that counsel should have argued that the evidence was not sufficient to prove that he brandished a firearm during the kidnapping offense.  However, trial counsel actually made that argument.  Not only did Espinoza's counsel argue that he played a minor role, but he persistently challenged the sufficiency of the evidence for Espinoza's convictions for kidnapping and brandishing a firearm at several stages of the case.

Counsel challenged the evidence orally at the conclusion of the government's case and renewed that challenge after the jury verdict on May 7, 2013.  Counsel argued that Counts 2, 3, 6 and 8 should fail because the evidence presented did not establish the elements of kidnapping, his client's membership and participation in the conspiracy, or an intent to deliver the 500 grams or

more of cocaine.  After the Court rejected those challenges, counsel filed a motion for a new trial based on the insufficiency of the evidence, advancing an argument that Espinoza was merely present during the relevant offenses.  Counsel argued that his client should be acquitted because the government failed to prove the elements of kidnapping.

Counsel cannot have performed deficiently when he actually did what the petitioner says he should have done.

### d.  Deficiencies in the Sentencing Memorandum

Section 924(c)(1)(A) carries a severe penalty for second or subsequent offenses.  One guilty of brandishing a firearm during a crime of violence faces a penalty of seven years in prison, to be served consecutively to any other prison term imposed for the underlying offense.  18 U.S.C. § 924(c)(1)(A)(ii).  But for a second conviction, at the time of the petitioner's crime, the statute called for a 25-year sentence that would run consecutively to all other sentences, including the consecutive sentence for the first brandishing conviction.  Espinoza contends that his attorney should have included an argument in his sentencing memorandum objecting to the consecutive sentences based on the Sixth Amendment and *Alleyne v. United States*, 570 U.S. 99 (2013), which was decided after trial, but before sentencing.  Espinoza contended that his counsel failed to argue that the Court violated the Sixth Amendment when it imposed a mandatory sentence on his section 924(c) conviction to run consecutively with the other sentences without finding that the convictions were second or successive.

In *Alleyne*, the Supreme Court held that, if a judge imposes the seven-year mandatory minimum sentence required for brandishing a weapon under section 924(c)(1)(A)(ii), then a jury must find beyond a reasonable doubt that the firearm was brandished.  570 U.S. at 116.  As the Sixth Circuit observed, "[t]he logical extension of *Alleyne* strongly suggests that a jury must find

whether a § 924(c) conviction is second or subsequent before the judge can increase the minimum sentence from five to twenty-five years." *United States v. Soto*, 794 F.3d 635, 664 (6th Cir. 2015). Espinoza contends that his attorney was ineffective by not arguing that the jury was not asked to resolve the timing issue.

Espinoza's counsel did file a sentencing memorandum, albeit late. In it, he argued against the imposition of the sentence on the section 924(c) count related to the drug trafficking crime. He also argued that the consecutive sentences on the two section 924(c) counts were greater than necessary. But he did not make the precise argument recited above.

If that amounted to deficient performance, though, it did not prejudice Espinoza. The Court considered and rejected identical objections raised by Soto and Santana at their sentencing hearings. The Court found that there were two distinct offenses in this action: kidnapping that occurred on October 20, 2009, which was completed when the victims were taken to Chicago, and a new plot to return to Detroit to rob Freeman that occurred on October 21, 2009.

On appeal, Soto and Santana challenged their consecutive sentences on the section 924(c) counts relying on *Alleyene*, just as Espinosa does here. The court of appeal declined to address the issue, finding that any potential error was harmless. *Soto*, 794 F.3d at 664. The court explained that

> it is clear beyond a reasonable doubt that the convictions on Count 7 and Count 8 were separate offenses. As for the two substantive offenses, we can identify the start and endpoint of each offense because the jury found Santana and Soto guilty of the substantive predicate offenses referenced in Counts 7 and 8: Count 2, possession of cocaine with the intent to distribute it; and Count 6, kidnapping . . . It is therefore logically consistent that the jury found Soto and Santana guilty of the two firearms offenses linked with the two predicate substantive offenses, which the evidence established occurred on two different days.

*Id.* at 665. Had Espinoza's attorney made that argument at sentencing and renewed it on appeal, he would have seen the same outcome.

The overriding reason that no prejudice flows from counsel's failure to make this argument, however, is that the second conviction and sentence for the section 924(c) violation in Count 8 is now vacated. And harm that might have been cured by the potential success of that omitted argument — and a 25-year consecutive sentence certainly qualifies as "harm" — no longer exists. Even if counsel performed deficiently, Espinoza cannot establish prejudice.

### e. Failure to Move to Sever Kidnapping and Drug Charges

Espinoza contends that he asked his lawyer to file a motion to sever the kidnapping charges from the drug charges. He thought he would have a better chance at an acquittal because of his minor role in the offenses if they were tried separately.

The severance motion would not have succeeded, though, and counsel "is not required to raise a non-meritorious claim." *Jalowiec*, 657 F.3d at 321-22. The kidnapping and drug trafficking offenses were intertwined. The crimes overlapped significantly, arose from a common scheme and plan, and were joined properly. *See United States v. Deitz*, 577 F.3d 672, 692 (6th Cir. 2009); *United States v. Tran*, 433 F.3d 472, 477-78 (6th Cir. 2006) (joinder of two arson counts was proper because the evidence at trial demonstrated that the offenses were of the same or similar character and involved overlapping proof).

Moreover, the Sixth Circuit considered and rejected the same severance claim when Santana argued it on appeal. *Soto*, 794 F.3d at 657 (Santana "contends that his role in the kidnapping venture was minor, and therefore trying the two charges together made Santana seem like a hard-core drug trafficker when he was small-time participant.") The Sixth Circuit found that the joinder of the kidnapping and drug counts was not erroneous because Santana could not demonstrate that the joinder prejudiced his defense. *Ibid.* In fact, the court of appeals referred to Espinoza's acquittal on the drug conspiracy count as evidence that the joinder was not prejudicial

because it demonstrated the jury's "ability to compartmentalize the evidence and evaluate how [it] applie[d] to separate, interrelated charges." *Ibid.*

\* \* \* \* \*

Petitioner Espinoza has not established both deficient performance and prejudice on any of his claims of ineffective assistance of counsel.

### 2. Santana's Arguments

Petitioner Santana contends he was denied the effective assistance of counsel because (1) his attorney failed to object to the language in Counts 7 and 8 of the superseding indictment (the section 924(c) charges) as duplicitous and did not challenge the jury instructions for those counts, and (2) counsel failed properly to advise him of the elements of the offenses, which caused him to reject a plea deal.

### a. Counts 7 and 8

Section 924(c)(1)(A), quoted in part above, "criminalizes two distinct offenses: (1) a 'use or carriage' offense, which has 'during and in relation to' as its 'standard of participation,' and (2) a 'possession' offense, which has 'in furtherance of' as its standard of participation." *United States v. Savoires*, 430 F.3d 376, 379 (6th Cir. 2005) (citing *United States v. Combs*, 369 F.3d 925, 930–33 (6th Cir. 2004)). Counts 7 and 8 of the indictment charged both the "use and carry" and the "possession" version of the offense. As such, those counts were duplicitous. *Ibid.*; *see also United States v. Boyd,* 640 F.3d 657, 665 (6th Cir. 2011) ("An indictment is duplicitous if it sets forth separate and distinct crimes in one count."). Santana argues that his attorney should have objected to Counts 7 and 8 on that ground. Actually, though, he did.

Trial counsel for petitioner Espinoza raised this exact issue before trial. When he called the indictment's flaw to the Court's attention, the Court acknowledged it and accepted the assertion

that the government would have to elect between the two charges in each count before the case went to the jury.  Santana's attorney specifically joined in that objection.

Moreover, the duplicity in Counts 7 and 8 was cured by the jury instructions.  The Court instructed the jury on Count 7 on the crime of "brandishing a firearm on or about October 20 through 22, 2009, during and in relation to the drug-trafficking crimes charged in Counts 1 and 2 of the indictment."  Trial Tr., Vol 9 at 41-43, ECF No. 546, PageID.4000).  For Count 8, the court instructed the jury on "brandishing a firearm on or about October 20 through 22, 2009, during and in relation to the kidnapping crimes charged in Counts 5 and 6 of the indictment."  *Ibid.*  The instructions on each count identified only one version of a section 924(c)(1)(A) offense.

The "vice of duplicity" is that it "calls into question the unanimity of a verdict of guilty." *Savoires*, 430 F.3d at 380 (citing *United States v. Davis,* 306 F.3d 398, 415, 416 (6th Cir. 2002)).  But the jury in this case was not given an option to choose among various alternatives when deciding on a verdict on Counts 7 and 8.  Defense counsel properly identified the potential problems with Counts 7 and 8, and the Court responded in a way that eliminated the potential prejudice.  That is because "proper jury instructions can mitigate the risk of jury confusion and alleviate the doubt that would otherwise exist as to whether all members of the jury had found the defendant guilty of the same offense."  *Ibid.*

Santana criticizes the instruction because the Court did not define "use."  However, the defendants were charged with "brandishing," which requires its own definition.  *See Alleyne*, 570 U.S. at 115.  The Court defined that term for the jury, and "use" is subsumed within the concept of brandishing.  Because the jury instructions cured any duplicity in the indictment and accurately defined the crimes, there was nothing for counsel to object to.  *See United States v. Lloyd*, 462 F.3d 510, 514-15 (6th Cir. 2006).  No deficient performance can be found in this argument.

b. Plea Discussions

Santana argues that his attorney mishandled plea negotiations, first by not explaining adequately the elements of the crimes and what the government would have to prove, and then by misjudging the strength of the government's case.  Santana says that on the morning of the first day of trial, his lawyer told him that the government extended a 17-year plea offer.  He says that his lawyer's bad advice caused him to reject it.

It is well established that an attorney must communicate the terms of a formal plea offer to his client.  *Missouri v. Frye*, 566 U.S. 134, 145 (2012).  Failing to do so may amount to constitutionally deficient assistance of counsel as defined in *Strickland*, 466 U.S. at 686.  A defendant also has the right to effective assistance of counsel in considering whether to accept a plea offer.  *Lafler v. Cooper*, 566 U.S. 156, 168 (2012); *see also Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003) ("A criminal defendant has the right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face").

But as the Supreme Court has observed, "[i]f no plea offer is made, or a plea deal is accepted by the defendant but rejected by the judge, the issue raised here simply does not arise." *Lafler*, 566 U.S. at 168.  Both defense counsel and counsel for the government have sworn that no plea offer ever was made to Santana.  And he has not pointed to anything in the record that even raised a question on that point sufficient to warrant an evidentiary hearing.  *See Witham v. United States*, 355 F.3d 501, 506 (6th Cir. 2004).

The government avers that it never engaged in formal plea negotiations because Santana maintained his innocence from the outset and expressed no interest in negotiating a plea, even after

receiving notice that the government would lodge additional, more severe charges against him. Santana's trial counsel confirms that plea negotiations were verbal and never matured into a formal written offer.

In the original indictment, Santana was charged with conspiracy to distribute five kilograms or more of cocaine in Count 1 and possession with intent to distribute five kilograms or more of cocaine in Count 2. The charges carried a mandatory minimum sentence of 10 years each. The superseding indictment, which included the kidnapping and firearm offenses, increased Santana's sentence exposure to a mandatory consecutive minimum sentence of at least 42 years.

Nonetheless, throughout the proceedings, Santana expressed no interest in pleading guilty, according to his attorney. During his arraignment on the original indictment on March 11, 2011, Santana refused to sign an acknowledgment of the charges against him. Santana also refused to acknowledge each of the subsequent superseding indictments. Meanwhile, every other codefendant listed on the original indictment pleaded guilty or entered into plea agreements by December 14, 2011.

Before the superseding indictment was issued, the government shared with counsel its calculation of Santana's sentencing guideline range based on the drug offenses in the original indictment. Santana's counsel informed the government that he discussed a guilty plea with Santana, but Santana refused to engage in any negotiations. Moreover, during a status conference, the government notified Santana on the record that it would issue a superseding indictment that included additional charges for the kidnapping and gun offenses. The Court recessed the conference so that Santana's counsel could discuss the additional charges with him. Santana maintained his innocence and refused to negotiate a plea deal.

Santana's counsel provided an affidavit, which corroborated the government's assertions. Santana's counsel explained that his client had no intention of pleading guilty to any offense. Counsel also maintained that he fully advised Santana about the nature of the charges against him, the potential consequences of proceeding to trial, and the government's evidence.  And although Santana had several opportunities to negotiate a plea deal, he decided to try the case.  It was his decision to make.  The fact that Santana's choice in retrospect was unwise does not render his counsel's service ineffective.  *See Smith*, 348 F.3d at 552.

* * * * *

Petitioner Santana is not entitled to any relief on his ineffective-assistance-of-counsel claims.

### C.  Retroactive Application of Amendment 794

Petitioner Espinoza asserts that he is entitled to a reduction of his sentence under Amendment 794 of the sentencing guidelines, contending that he played only a minor role in the offense.

The United Sentencing Commission amended its guidelines to clarify the allowance of an offense-level reduction for defendants who play minor roles in crimes.  To resolve a circuit split, the Sentencing Commission amended U.S.S.G § 3B1.2 by changing the language and including a non-exhaustive list of factors courts should consider when determining whether to reduce an offense level due to an individual's minor role in an offense.  *See* U.S.S.G. App. C. Amend. 794; *United States v. Quintero-Leyva*, 823 F. 3d 519, 522-523 (9th Cir. 2016).  The newly amended section 3B1.2 now states that "a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks, should be considered" for a reduction, and "[t]he fact that a defendant performs an essential or indispensable role in the

criminal activity is not determinative." *Ibid.*  The commentary includes a list of factors the Court should consider when deciding whether to apply the reduction.  U.S.S.G. § 3B1.2, cmt. n.1(C).

Espinoza's was sentenced on October 29, 2013 and his conviction became final on June 8, 2015, when the Supreme Court denied *certiorari*.  Amendment 794 took effect on November 1, 2015.

Generally, a criminal sentence is final once direct review concludes, and the sentencing court lacks the authority to revisit it.  *Dillon v. United States*, 560 U.S. 817, 824 (2010).  A court "may not modify a term of imprisonment once it has been imposed" except under limited circumstances.  18 U.S.C. § 3582(c).  One such circumstance is "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013).

The "applicable policy statements" referenced in section 3582(c)(2) are those found in section 1B1.10 of the Sentencing Guideline Manual.  *Dillon*, 560 U.S. at 826.  Under that section, a sentence reduction under section 3582(c)(2) is authorized only when a listed amendment has "the effect of lowering the defendant's applicable guideline range."  U.S.S.G. § 1B 1.10(a)(2)(B). Section 1B1.10(d) lists all Guideline amendments that the Sentencing Commission has made retroactively applicable to defendants on collateral review.  Amendment 794 is not listed in section 1B1.10(d).  Espinoza, therefore, is not entitled to any relief from his sentence based on Sentencing Guideline Amendment 792.  *See United States v. Perez-Carrillo,* 2016 WL 4524246 *2 (W.D. Virginia 2016) (denying request for sentence reduction under § 2255 because "[s]ection 1B1.10 lists all Guidelines amendments that the Sentencing Commission has made retroactively applicable

to defendants on collateral review, rather than direct appeal, and Amendment 794 is not listed in § 1B1.10 as retroactively applicable.").

III.

The petitioners' convictions for kidnapping and conspiracy to commit kidnapping do not qualify as crimes of violence under the elements clause of 18 U.S.C. § 924(c)(3)(A), and they cannot qualify under the now invalidated residual clause of section 924(c)(3)(B).  There are no other qualifying predicate offenses to support the convictions under section 924(c) charged in Count 8 of the superseding indictment.  The petitioners therefore have established, as to the sentences for those offenses only, that they are in custody in violation of the federal constitution, and their motions to vacate their sentences will be granted in part.  However, the petitioners have not put forth any grounds to suggest that their trial lawyers were ineffective in any of the instances cited in the motions, and the record of the proceedings conclusively shows that there were no defects in the petitioners' legal representation of constitutional magnitude.  The petitioners therefore have not established that they are entitled to relief from their convictions or sentences on the other counts of the superseding indictment.

Accordingly, it is **ORDERED** that the petitioners' motions to vacate their sentences (ECF Nos. 612, 623, 674) are **GRANTED IN PART**, and the petitioners' convictions of and sentences for brandishing a firearm in furtherance of crimes of violence, contrary to 18 U.S.C. § 924(c), in Count 8 of the superseding indictment are **VACATED**.  The petitioners' motions to vacate their convictions and sentences are **DENIED** in all other respects.

It is further **ORDERED** that the petitioners shall be resentenced on the remaining convictions, and the probation department is directed to prepare new presentence reports.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   April 20, 2020